Jeffrey **WILLIAMS**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 49A05–0312–CR–606.

Court of Appeals of Indiana.

Oct. 13, 2004.

Transfer Denied Jan. 6, 2005.

Publication Ordered Nov. 24, 2004.

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Jeffrey Williams was charged with four counts of Criminal Deviate Conduct[1] and Rape,[2] all class A felonies. On interlocutory appeal, Williams presents a single issue for review: Did the trial court improperly deny his Motion for Specific Discovery requesting the alleged victim's mental health and prescription records?

We affirm in part, reverse in part, and remand.

On October 9, 2003, the State charged Williams with four counts of criminal deviate conduct and rape. The probable cause affidavit alleged that Williams and K.W.M. lived together, and on July 31, 2003,

---

1. Ind.Code Ann. § 35–42–4–2 (West 1998).

2. I.C. § 35–42–4–1 (West 1998).

K.W.M. awoke to find Williams forcing his hand into her vagina. Williams allegedly proceeded to insert a curling iron into her vagina, forced her to engage in sexual intercourse, placed a curling iron in her anus, and forced her to perform oral sex on him. The probable cause affidavit also alleged that K.W.M. informed police she was on medication to help her sleep the night of the attack and as a result was disoriented at the onset. Additionally, Williams's nephew, who was staying at the apartment the night of the alleged attack, informed police he had heard K.W.M. verbally resist Williams but that she "was all drugged up because her doctor has her on medication for her seizures, and that it seemed that she was not able to fight" him off. *Appellant's Appendix* at 22.

On October 20, 2003, Williams filed a Motion for Specific Discovery (Motion) seeking: (1) business records from a particular Walgreens indicating any prescriptions filled by K.W.M. in the past three years; (2) mental health records, both created and gathered from other health care institutions for the purpose of treatment, in the custody of St. Francis Behavioral Health where K.W.M. had been a patient; and (3) records generated in a CHINS action involving K.W.M. and Williams.[3] Williams alleged in the Motion that K.W.M. was addicted to pain medications and had been diagnosed with bipolar disorder and manic depression, which affected her credibility and provided motivation to fabricate the assault allegations. The court held a hearing on the Motion on October 28, 2003, after which the trial court issued a written order stating that Williams wanted to go on a "fishing expedition" and denying the Motion on the basis of the physician-patient privilege to the extent it sought mental health and prescription records. *Id.* at 50. Williams filed a petition to certify the order for interlocutory appeal on October 30, 2003, which the trial court granted the following day. This court accepted the interlocutory appeal on January 30, 2004.

On appeal, Williams claims that the trial court abused its discretion in denying his request for mental health and prescription records, as the information sought was specific, material, and the State made no showing of a paramount interest in non-disclosure. Williams also asserts that the trial court erroneously denied his Motion based on the physician-patient privilege because K.W.M., the owner of the privilege, never asserted it. Finally, Williams claims that even if he failed to make a sufficient showing to require release of the documents, an in camera review should be ordered because doubts remain about materiality and the assertion of privilege.

■ Our standard of review in discovery matters is abuse of discretion. *Kristoff v. Glasson*, 778 N.E.2d 465 (Ind.Ct. App.2002). Thus, we will reverse only where the trial court has reached an erroneous conclusion which is clearly against the logic and effect of the facts of the case. *Id.* This applies to requests for in camera review of items to determine if they are discoverable. *In re WTHR–TV*, 693 N.E.2d 1 (Ind.1998). Moreover, " '[d]ue to the fact-sensitive nature of discovery matters, the ruling of the trial court is cloaked in a strong presumption of correctness on appeal.' " *Kristoff v. Glasson*, 778 N.E.2d at 470–71 (quoting *Pioneer Lumber, Inc. v. Bartels*, 673 N.E.2d 12, 15 (Ind.Ct.App. 1996)). We may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though this was not the

---

**3.** K.W.M. and Williams apparently have a child together. These records are not at issue in this appeal.

reason enunciated by the trial court. *See Benham v. State*, 637 N.E.2d 133 (Ind. 1994).

    ■■■ In criminal cases, to determine if information sought is properly discoverable:

> (1) there must be a sufficient designation of the items sought to be discovered (particularity); (2) the items requested must be material to the defense (relevance); and (3) if the particularity and materiality requirements are met, the trial court must grant the request unless there is a showing of "paramount interest" in non-disclosure.

*In re WTHR–TV*, 693 N.E.2d at 6 (citing *Kindred v. State*, 540 N.E.2d 1161 (Ind. 1989)). To demonstrate particularity, the request must enable the subpoenaed party to identify what is sought and allow the trial court to determine whether there has been sufficient compliance with the request. *In re WTHR–TV*, 693 N.E.2d 1. Regarding materiality/relevance:

> An item is "material" if it appears that it might benefit the preparation of the defendant's case. The relevance of some information or items may be self-evident. Nonetheless, "[w]here the materiality of the information is not self-evident the [defendant] must indicate its potential materiality to the best of his ability. . . ."

*Id.* at 7 (citations omitted). Evidence is "material" if it might reasonably affect the outcome of the trial. *Hulett v. State*, 552 N.E.2d 47 (Ind.Ct.App.1990).

    ■■■ Once a party demonstrates particularity and materiality, the trial court must grant the discovery request unless there is a showing of a paramount interest in non-disclosure. *Lewis v. State*, 726 N.E.2d 836 (Ind.Ct.App.2000).

> The term [paramount interest] suggests that some fundamental and important

stake is required to resist discovery. However, the depth of the interest in resisting may be no more than inconvenience if the need for it from a given source is minimal—for example, because it is readily available elsewhere without need to drag third parties into court. Whether a sufficient interest has been shown to prevent discovery "will depend upon the type of interest put forth" and "the category of information sought." *Dillard* [*v. State* ], 257 Ind. [282,] at 292, 274 N.E.2d [387,] at 392 [ (1971) ].

*In re WTHR–TV*, 693 N.E.2d at 7. Ultimately, the three-part test for discoverable information in a criminal proceeding involves balancing "the relevance of the material, its availability from other sources, the burden of compliance measured in terms of difficulty, and the nature and importance of the interests invaded." *Id.*

    Regarding K.W.M.'s mental health records, Williams sought "medical records both created and gathered from other health care institutions for the purpose of treatment and held in the custody of St. Francis Behavioral Health." *Appellant's Appendix* at 38. He claimed these were necessary to establish that K.W.M. is "bipolar and suffers from manic depression, among other things" thereby providing motivation for her to fabricate the sexual assault charges. *Id.* at 38. We may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though this was not the reason enunciated by the trial court. *See Benham v. State*, 637 N.E.2d 133.

    Discovery of mental health records are subject to the particularized requirements of Ind.Code Ann. § 16–39–3–3 (West 1998), which provides that a person "seeking access to a patient's mental health record without the patient's written consent . . . may file a petition in a circuit or superior court requesting a release of the

patient's mental health record." After a hearing on the issue, the trial court may order the release of the records based upon certain findings. I.C. § 16–39–3–7 (West 1998). A notice of the hearing must be served on both the patient and the provider maintaining the records at least fifteen days in advance of the hearing. I.C. § 16–39–3–4 (West 1998). The fifteen-day advance notice providing the patient and provider the opportunity to be heard on the issue of releasing records is "compulsory." *Thompson v. State,* 765 N.E.2d 1273, 1276 (Ind.2002). Further, the patient has the right to have an attorney present at the hearing, and the notice must inform the patient of this right. I.C. § 16–39–3–5 (West 1998).

■ Williams's Motion does not mention I.C. § 16–39–3 or its requirements and was served on the State and trial court—not K.W.M. or St. Francis Behavioral Health (St. Francis). Moreover, there is no evidence that either K.W.M. or St. Francis were provided notice of the hearing or that either was present. The hearing was held eight days after Williams filed the Motion, and therefore did not comply with the compulsory fifteen-day notice period of I.C. § 16–39–3. Williams asserts that the trial court erred by setting the hearing date before the fifteen-day period had expired. Even if the fifteen-day period had passed, however, Williams did not serve his Motion on K.W.M. or St. Francis, provide notice of the hearing, or inform K.W.M. of her right to have an attorney present to protect her interests or contest release of the records. The onus does not rest with the trial court to ensure that a criminal defendant properly complies with statutory procedures in order to gain access to a victim's confidential mental health records. The trial court properly denied Williams's Motion to the extent it sought K.W.M.'s mental health records in St. Francis's custody.[4]

■ To make a sufficient showing that K.W.M.'s prescription drug records were discoverable, Williams must demonstrate that his request was particular and material. Williams's request for K.W.M.'s prescription drug records from an identified Walgreens store for the past three years satisfies the particularity requirement as it allows Walgreens to identify what Williams seeks and allows the trial court to determine whether there had been sufficient compliance with the request. *See In re WTHR–TV,* 693 N.E.2d 1. Regarding relevance, while generally evidence of drug use may be excluded at trial, evidence of drug use affecting a witness's ability to recall underlying events is admissible. *Williams v. State,* 681 N.E.2d 195 (Ind.1997). In his Motion, Williams asserted that K.W.M. is "drug addicted to pain medication, [and was] off of her prescription medication at the time these allegations were made, medicine that had in fact been prescribed by health care professionals . . . all of which affects her credibility and her motive to fabricate these allegations." *Appellant's Appendix* at 38. At the Motion hearing, Williams additionally testified that K.W.M. used marijuana, Methadone, pain killers, and OxyContin, some of which was prescribed to her, and testified that he believed her drug abuse was a motivating factor for K.W.M.'s accusations. Williams further testified that when

---

4. Williams is free, within the parameters of discovery and evidentiary rules, to elicit deposition and trial testimony from K.W.M. on her alleged mental illnesses, as well as offering expert testimony on what impact, if any, these mental illnesses might have on an individual's veracity or motivation to fabricate allegations of sexual assault. Finally, to the extent Williams has actual knowledge of K.W.M.'s illnesses based on accompanying her to the doctor as stated at the Motion hearing, he may testify to this knowledge.

K.W.M. failed to take her medication she "gets uncontrollable," becomes hostile, and has threatened to call the police on Williams. *Transcript* at 8. In the probable cause affidavit, K.W.M. informed police she was disoriented at the beginning of the alleged attack by virtue of a medication she was taking to help her sleep, and Williams's nephew informed police K.W.M. was "drugged up" due to a medication she took for seizures. *Appellant's Appendix* at 22.

K.W.M.'s prescription drug records would provide insight on the medication she may have ingested the night of the attack and relates to K.W.M.'s ability to accurately perceive and recount events.[5] While access to K.W.M.'s prescription records will not definitively establish the particular medication taken that night, the requested information does have a tendency to assist Williams's defense for purposes of cross-examination and potential impeachment. Especially in light of K.W.M.'s admission to police that she was disoriented when the attack began and Williams's nephew's testimony that K.W.M. was "drugged up," the information sought is material.

■ Since Williams has made a sufficient showing of particularity and materiality, the trial court must grant the request unless the State demonstrates a paramount interest in non-disclosure. The State asserts that maintaining the confidentiality of K.W.M.'s prescription drug records presents such a paramount

interest. Prescriptions are considered confidential information in Indiana. Ind. Code Ann. § 25–26–13–15 (West 1998); *see also Sharp v. State,* 569 N.E.2d 962 (Ind.Ct.App.1991) (finding that prescriptions are privileged information). I.C. § 25–26–13–15 provides, in relevant part:

(a) A pharmacist shall hold in strictest confidence all prescriptions, drug orders, records, and patient information. He may divulge such information only when it is in the best interest of the patient or when requested by the [Board of Pharmacy] or its representatives or by a law enforcement officer charged with enforcement of law pertaining to drugs or devices or the practice of pharmacy.

(b) A person with knowledge by virtue of his office of any prescription drug order, record, or patient information may not divulge such information except in connection with a criminal prosecution or proceeding or proceeding before the board, to which the person to whom the information relates is a party.

Thus, in determining whether Williams's request was properly denied, we must balance K.W.M.'s right to maintain the confidentiality of her prescription drug records with Williams's right to adequately defend the instant charges. Keeping information confidential may suffice as a reason to deny discovery, *In re WTHR–TV,* 693 N.E.2d 1, and I.C. § 25–26–13–15 indicates our legislature's desire to protect the confidentiality of prescription drug records in certain circumstances.[6] Here, however, the underlying crimes are of special signif-

---

**5.** We construe Williams's argument that K.W.M.'s use of prescription drugs impacts her "credibility" as equivalent to a claim that her perception and recollection of the events the night in question could be suspect based on such use.

**6.** We decline the State's invitation to construe narrowly I.C. § 25–26–13–15(b)'s use of the word "party" so as to encompass only

Williams and the State. The statute indicates an intent to allow discovery of prescription records in criminal proceedings and it is not clear that the legislature intended to exclude a complaining witness's prescription drug records from discovery especially where, as here, the use of a prescription drug has the real potential to impact Williams's ability to defend himself.

icance. Williams is charged with rape and criminal deviate conduct based on K.W.M.'s graphic allegations of sexual assault. Williams and K.W.M. shared a prior intimate relationship before the incident in question. The record indicates that Williams will defend himself, in part, on grounds that the events were consensual based on the couple's past romantic relationship and their particular sexual proclivities. In sexual assault cases, perception of events and credibility are crucial factors with the potential to significantly influence a fact-finder's determination. Access to information that would call into question such perception could affect Williams's ability to adequately defend himself and is paramount to K.W.M.'s confidentiality concerns as asserted by the State.[7] We therefore reverse the trial court's denial of Williams's Motion to the extent it seeks access to K.W.M.'s prescription drug records.[8]

Judgment affirmed in part, reversed in part, and remanded.[9]

BAKER, J., and DARDEN, J., concur.

### ORDER

This Court having heretofore handed down its opinion in this cause on October 13, 2004 marked Memorandum Decision, Not for Publication.

The Appellant, by counsel, has now filed a Motion to Publish, requesting said opinion be published for the reason that this Court's holding regarding mental health records clarifies discovery requirements generally and clarifies the specific requirements for seeking mental health records, which were not mentioned or followed by either counsel or the trial court in this case.

The Court having examined said Motion, having reviewed its opinion in this case and being duly advised, now finds that said Motion to Publish should be granted.

IT IS THEREFORE ORDERED that upon the above-recited Motion, this Court's opinion heretofore handed down in this cause on October 13, 2004, marked Memorandum Decision, Not for Publication, is now ordered published.

---

7. The physician-patient privilege also does not prevent disclosure. It is telling that the State makes no attempt to rebut Williams's claims that the physician-patient privilege is inapplicable here as it is a privilege for the benefit of the *patient* and can only be asserted by the patient. *See Thomas v. State*, 656 N.E.2d 819, 822 (Ind.Ct.App.1995) ("[t]he privilege is held by the patient and only the patient, or his heirs or personal representatives after his death, may waive the privilege"); *see also Goodwin v. State*, 573 N.E.2d 895 (Ind.Ct. App.1991).

8. This is not to say that any information gleaned from this discovery request is admissible at trial, especially as it pertains to one of Williams's stated reason for needing this information, *i.e.*, to demonstrate K.W.M.'s mo-

tive to fabricate her allegations. We fail to see how K.W.M.'s use of prescribed medication could create a motive to manufacture sexual assault allegations; rather, the relevance of this information is limited to the narrow question of whether K.W.M.'s ingestion of medication on the evening in question affected her perception and recall of events. Our discovery rules cast a much wider net than do our admissibility rules, and we offer no opinion on what, if any, of this information would be admissible at trial.

9. Since our holding permits discovery of K.W.M.'s prescription records but finds that Williams was not entitled to K.W.M.'s mental health records, we do not address Williams's argument pertaining to in camera review of the documents.