**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARIELENA DUERRING**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DARRYL S. NEWELL, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )  No. 20A03-1401-CR-23 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-1010-FA-33

**September 18, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Darryl Newell appeals his convictions for Class A felony child molesting and Class B felony criminal deviate conduct. We affirm.

## Issue

The sole issue before us is whether the trial court properly denied Newell's motion to obtain access to the victim's mental health records.

## Facts

On October 18, 2010, the State charged Newell with one count of Class A felony child molesting and one count of Class B felony criminal deviate conduct. The charges concerned events occurring in the summer of 2009, and the alleged victim was C.B., who was thirteen at the time. During discovery, Newell's attorney learned that C.B. had been adjudicated a delinquent child in September 2010 and had received treatment at Paddock View Residential Center ("Paddock View") in Marion in connection with that adjudication.[1]

Newell filed a petition requesting access to C.B.'s mental health records related to her treatment at Paddock View. Newell served copies of this petition on the State and C.B.'s attorney in the delinquency matter, but not on Paddock View. The trial court held a hearing on the petition on July 5, 2012, which it continued to September 27, 2012, after it appointed a guardian ad litem to represent C.B.'s interests. The State and C.B.'s guardian ad litem objected to release of the records. No representative from Paddock View appeared

---

[1] What led to C.B.'s delinquency adjudication is not apparent from the record.

2

at either hearing, nor is there any evidence that Paddock View received any notice of the hearings.[2]

The trial court denied Newell's petition to access C.B.'s mental health records, expressly rejecting Newell's request that the trial court review the records in camera before ruling on the matter. The trial court subsequently denied an oral motion to reconsider that decision. After a jury trial, Newell was convicted as charged and sentenced accordingly. He now appeals.

**Analysis**

Newell's sole challenge to his convictions is that he should have been granted access to C.B.'s mental health records or, at the very least, that the trial court should have reviewed the records in camera before issuing its ruling. We review trial court discovery rulings for an abuse of discretion. Williams v. State, 819 N.E.2d 381, 384 (Ind. Ct. App. 2004), trans. denied. We will reverse only if a ruling is clearly against the logic and effect of the facts of the case. Id. This same standard applies to requests for a trial court to review items in camera to determine their discoverability. Id. We may affirm a trial court's ruling on any legal basis apparent in the record, even if it is not a reason enunciated by the trial court. Id. at 384-85.

Mental health records are made generally confidential by Indiana Code Section 16-39-2-7, which states that, "[e]xcept as provided in section 8 of this chapter, the mental

---

[2] Newell's petition explicitly referred to C.B.'s treatment at Paddock View. Later, during a trial court hearing, Newell's attorney referred to "Oaklawn records." Tr. p. 64. There is likewise no evidence that any representative of an "Oaklawn" facility appeared at any trial court hearings or had any notice of them. For the sake of simplicity, we will refer only to Paddock View in this opinion.

health record is not discoverable or admissible in any legal proceeding without the consent of the patient." Because C.B. did not consent to the release of her records from Paddock View, Newell had to seek release of the records under Indiana Code Section 16-39-2-8(a), which provides that a court "may order release of the patient's mental health record without the patient's consent upon the showing of good cause following a hearing under IC 16-39-3 . . . ."[3] That chapter of the Indiana Code allows the filing of a petition in a trial court and the release of such records if the court finds by a preponderance of the evidence that:

> (1) other reasonable methods of obtaining the information are not available or would not be effective; and
>
> (2) the need for disclosure outweighs the potential harm to the patient. In weighing the potential harm to the patient, the court shall consider the impact of disclosure on the provider-patient privilege and the patient's rehabilitative process.

Ind. Code § 16-39-3-7.

Newell asserts that, at a minimum, the trial court should have evaluated C.B.'s mental health records in camera to ascertain if there was any potentially exculpatory or impeaching evidence in them, such as perhaps that C.B. had a reputation for untruthfulness or that she made statements to a counselor exculpating Newell. We find it unnecessary to address whether the trial court should have conducted an in camera review of the records. As noted by the State, Indiana Code Section 16-39-3-4 requires that the provider maintaining sought-after mental health records, or the attorney general if the provider is a state institution, receive notice of the hearing to address the release of such records. In

---

[3] A subsection (b) was added to this statute in 2014, but it has no relevance to this case.

4

Williams, we affirmed the denial of a defendant's request to access mental health records on the sole basis that he had failed to provide notice of his request and of the hearing on that request to both the person whose records were sought and the provider who maintained the records. Williams, 819 N.E.2d at 386. Additionally, neither the person nor the provider were present at the hearing. Id. We stated, "[t]he onus does not rest with the trial court to ensure that a criminal defendant properly complies with statutory procedures in order to gain access to a victim's confidential mental health records." Id.

Here, the record does not reveal that Paddock View had any notice of Newell's petition to release C.B.'s mental health records or of the hearings to address the release of those records. It also did not appear at those hearings. The failure of a mental health provider to receive notice of and participate in a hearing regarding release of a patient's records is no trivial matter. The statute allowing release of such records requires trial courts to consider the potential harm of release to the patient, including possible harm to the "patient's rehabilitative process." I.C. § 16-39-3-7. A mental health provider would be in the best position to provide evidence on that point. As in Williams, the trial court was not obligated to correct Newell's failure to give proper notice to the maintainer of C.B.'s records. We conclude that Newell's failure to comply with the particularized requirements for obtaining release of a person's mental health records was fatal to his petition.

**Conclusion**

The trial court did not abuse its discretion in refusing to permit release of C.B.'s mental health records or in refusing to review those records in camera before ruling. We affirm Newell's convictions.

Affirmed.

BRADFORD, J., and BROWN, J., concur.