## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 28 2016, 10:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lori B. Schmeltzer
Schmeltzer Law PLLC
Traverse City, Michigan

ATTORNEY FOR APPELLEE

Timothy R. Stoesz
Stoesz & Stoesz
Westfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Elizabeth Marshall,

*Appellant-Petitioner,*

v.

Sean Marshall II,

*Appellee-Respondent.*

November 28, 2016

Court of Appeals Case No.
29A05-1604-DR-769

Appeal from the Hamilton
Superior Court

The Honorable Daniel J. Pfleging,
Judge

Trial Court Cause No.
29D02-1410-DR-10058

**Najam, Judge.**

# Statement of the Case

Elizabeth Marshall ("Mother") appeals the trial court's grant of custody of J.M. ("Child") to Sean Marshall II ("Father"). She raises the following four issues on appeal:

1. Whether the trial court erred when it quashed Mother's motion to compel discovery of Father's mental health records.

2. Whether the trial court erred when it failed to issue findings regarding Child's best interests.

3. Whether the trial court erred when it failed to consider the Indiana relocation statutes in its custody determination.

4. Whether the trial court abused its discretion when it calculated Mother's child support obligation.

We affirm.

# Facts and Procedural History

Mother and Father were married on April 3, 2010. They have one minor child together, J.M. ("Child"), born November 2, 2012. Mother also has two older children from a previous relationship, D., age eight, and H., age seven. During the marriage, Father was in the military and often worked contract jobs overseas beginning in December 2010. He returned home periodically for month-long vacations. Father resigned his overseas job and began living with

Mother and Child and Child's siblings in July 2013. Child has lived primarily with Mother his entire life, along with his two older siblings.

[4] Mother filed for dissolution of marriage on October 17, 2014. On that same date, she and Child and his siblings moved out of the former marital residence and into a home where Child's maternal grandmother, maternal great aunt, two maternal second cousins, and maternal great uncle also lived. Child lived primarily in that home during the pendency of the dissolution proceedings.

[5] On October 29, Father filed a notice of intent to relocate to Arizona with Child. Father had parenting time with Child in Indiana on November 6 and 7 and November 13 and 14. In mid-November, Father moved to Arizona, without Child, to live with his parents and his three siblings. On December 11, Father filed an emergency petition for holiday parenting time to take place in Arizona and an emergency hearing because he believed Mother would deny him visitation with Child during the holidays.

[6] The trial court set the case for a preliminary hearing in January 2015, but, on its own motion, rescheduled the hearing for March 12. On March 12, Father filed a cross petition for dissolution of marriage in which he sought sole physical custody and joint legal custody of Child. The trial court began the preliminary hearing on March 12 but recessed before the parties completed their presentation of evidence. Father had parenting time with Child in Indiana from February 27, 2015, to March 1 and on March 12 and 13. On March 20, Mother filed an objection to Father's proposed relocation with Child. Father filed a

motion to strike Mother's objection as untimely, and the trial court granted Father's motion on April 1.

[7] On July 8, Mother filed a motion for an order compelling discovery in which she requested the court to order Father to sign an authorization to release all of Father's Veterans' Affairs ("VA") medical records.[1] On that same date Mother also filed a notice of intention to serve a request for production of documents to a nonparty, i.e., the VA. On July 14, Father filed an objection to the motion to compel discovery and a motion to quash the discovery request to the non-party.

[8] On August 20, the trial court held a hearing on the motions related to discovery. During the hearing, the court noted that Mother must follow the procedures outlined in Title 16 of the Indiana Code regarding the release of mental health records. Because Mother did not follow those procedures, the court granted the motion to quash and instructed the parties that they could proceed pursuant to Title 16 and/or through an agreement regarding the release of Father's mental health records, to be approved by the court. Tr. at 12-13.

[9] On November 3, Mother requested that the court appoint a guardian ad litem ("GAL"), which the court did on December 2. The GAL submitted her report to the court on December 31, 2015. In her report, the GAL recommended that Father have sole physical custody of Child because Father would support

---

[1] Previously, in an e-mail dated April 30, 2015, counsel for Mother had asked counsel for Father to have Father sign such an authorization, and to "consider this a request under the discovery rules." Appellant's App. at 59.

Child's relationship with Mother, but Mother would not support Child's relationship with Father. The GAL noted that Mother admitted that she kept health information about Child from Father and that she did not support Father spending time with Child. The GAL also made the following relevant recommendations:

> In conclusion, after conducting a thorough investigation in this matter, I respectfully recommend the following as in the best interests of the parties' minor child, [J.M.]:
>
> 1.    Physical custody of [J.M.] with Father in Mesa, Arizona.
>
> 2.    Parenting time for Mother and [J.M.] in Indiana pursuant to Section III of the IPTG where distance is a major factor, with some accommodations to the number and length of visits for 2016-2017 as outlined above,[2] unless the parties may otherwise agree.
>
> 3.    Exchanges shall take place as outlined above at the Phoenix Sky Harbor International Airport, or Indianapolis International Airport with a parent flying with [J.M.] until he is of an age where he may travel without an adult accompanying him. Parties shall deliver [J.M.] to the other two (2) hours before scheduled departure at an agreed upon location outside of the designated TSA security area.

---

[2] The GAL report recommended additional parenting time beyond what is outlined in Section III of the Indiana Parenting Time Guidelines.

4. Contact by Skype or other video chat method three (3) times per week, to be initiated by the parent exercising time with [J.M.] to the other parent. Should the parties be unable to agree on a day and time, then said calls shall take place every Sunday, Thursday, and Friday at 6:30 p.m. EDT.

5. Each party shall facilitate the Skype calls for [J.M.] in order to have an optimal call and do nothing to interfere with the call.

6. Opportunities for additional parenting time to include Mother's visits to the local Mesa, Arizona[,] area with notice to Father pursuant to Section III (5) of the IPTG.

7. Joint legal custody decision-making authority for major life decisions for [J.M.]

8. Each parent to inform the other of all health related issues for [J.M.]

9. Each parent to have direct access to school, childcare, and health provider information.

10. Parents to not share in any manner the contents of the GAL report with or in front of the minor child, [J.M.]

11. Parents to not disseminate the contents of this report to others except as otherwise provided within this report.

12. Parents to speak with or of one another in only a positive or neutral manner in front of or to the minor child.

13.  Parents to not allow others (family members and friends) to speak of the other parent in anything other than a positive or neutral manner in front of or to the minor child.

14.  Parents to not post negatively of the other on social media.

15.  No repercussions to the minor child in any manner for anything that was shared with the GAL during my appointment.

Appellant's App., Vol. 3, at 55-56.

On January 4, Mother filed her motion for findings of fact and conclusions of law. The trial court held the final dissolution hearing on January 6, 2016, and issued a final dissolution order on March 16 in which it entered the following relevant findings of fact and conclusions of law:

FINDINGS OF FACT

* * *

7.  . . . On or about December 31, 2015, the GAL, Cathy M. Brownson, filed a 55-page report to this Court with recommendations as to custody, parenting time, and communication between the parties. This report and the GAL's testimony have been considered by the Court.

8.  Each party is a suitable parent. [J.M.] needs a custodial parent who will be supportive of his relationship with the non-custodial parent. [J.M.] needs a custodial parent who will speak of the other parent in only a positive or neutral

manner; one who will not allow other family members or friends to speak of the other parent in anything other than a positive or neutral manner.

* * *

CONCLUSIONS OF LAW

* * *

2.     Indiana Code § 31-17-2-8 provides that "the Court shall enter a custody order in accordance with the best interest of the child." Respondent [Father] shall have sole physical custody of the parties' minor child, [J.M.] (DOB 11-02-12). The Court is convinced[,] based upon the evidence, the exhibits, and the GAL's report[,] that Father will be the more neutral of the two parents and that he will foster an environment where [J.M.] can continue to maintain a strong, positive, and loving relationship with both parents.

3.     The parties will share joint legal custody of the parties' minor child.

4.     The Petitioner shall pay Respondent the sum of $114.00 per week in child support. (See attached worksheet)

5.     The Petitioner shall have parenting time with the minor child in accordance with the Indiana Parenting Time Guidelines ("IPTG"), Section III, where distance is a major factor[,] with some accommodations to the number and length of the visits for 2016-2-17 as set out in the GAL's report.

6.  The Court adopts the recommendations of the GAL in items 3 through 15 of her report, including provisions for additional parenting time and communication via Skype between the minor child and the Petitioner.

Appellant's App., Vol. 2, at 16, 18.  This appeal ensued.

# Discussion and Decision

### Issue One:  Discovery of Mental Health Records

[11]  Mother maintains that the trial court abused its discretion when it denied her motion to compel discovery of Father's mental health records and granted Father's motion to quash.[3]

> "Our standard of review in discovery matters is limited to determining whether the trial court abused its discretion." *Crawford v. State*, 948 N.E.2d 1165, 1169 (Ind. 2011) (quoting *Terre Haute Reg'l Hosp., Inc. v. Trueblood*, 600 N.E.2d 1358, 1362 (Ind. 1992)).  The trial court abuses its discretion when its "decision is against the logic and effect of the facts and circumstances before the court." *Jacobs v. State*, 22 N.E.3d 1286, 1288 (Ind. 2015).  "We do not reweigh the evidence; rather, we determine whether the evidence before the trial court can serve as a rational basis for its decision." *DePuy Orthopaedics, Inc. v. Brown*, 29 N.E.3d 729, 732 (Ind. 2015).

*Hale v. State*, 54 N.E.3d 355, 357 (Ind. 2016).

---

[3]  Father filed an objection to Mother's motion to compel, and he filed a motion to quash the discovery request to a non-party.  The trial court treated Father's objection to the motion to compel as a motion to quash Mother's discovery request and granted it.  It appears from the record that the court did not rule on the motion to quash the discovery request to a non-party.

It is true, as Mother asserts, that the mental health of a party to a custody dispute is always relevant and discoverable upon use of the proper procedures. *See* Ind. Code 31-17-2-8(6) (2016) (providing that the trial court must consider the mental health of all individuals involved when determining the child's best interest in a custody dispute). However, even assuming that Mother's request that Father sign an authorization to release his medical records could be considered a discovery request,[4] Mother failed to follow the correct procedure for obtaining the mental health records of another. As the trial court correctly noted, "[d]iscovery of mental health records [is] subject to the particularized requirements of Ind. Code Ann. §16-39-3-3 (West 1998)." *Williams v. State*, 819 N.E.2d 381, 385-86 (Ind. Ct. App. 2004), *trans. denied*.[5] Therefore, in order to obtain Father's mental health records, Mother was required to file a petition for release of the records, I.C. § 16-39-3-3(2), and provide notice to Father and the mental health provider of a hearing on that petition, I.C. § 16-39-3-4. Then the trial court would have been required to hold a confidential hearing, I.C. § 16-39-3-6, and make findings that (1) other reasonable methods of obtaining the

[4] Trial Rule 26(A) lists the methods for obtaining discovery, but Mother did not use any of those methods. Rather, she simply sent an e-mail to Father and asked that he "consider this a request under the discovery rules." Appellant's App. at 59. That was not a proper discovery request.

[5] Mother cites *Owen v. Owen*, 563 N.E.2d 605, 608 (Ind. 1990), for the proposition that a party to a custody dispute places his mental condition at issue and thereby waives any physician-patient privilege such that his mental health records are discoverable unless he obtains a protective order. However, *Owen* was decided before Indiana Code Section 16-39-3 ("Release of Mental Health Records in Investigations and Legal Proceedings") was enacted in 1993. That Chapter specifically addresses special procedures to be used when seeking the mental health records of another party to a lawsuit without that party's consent. Thus, while the reasoning of *Owen* is still applicable to medical records, *Owen* has been superseded by statutes regarding the discovery of mental health records specifically. *Williams*, 819 N.E.2d at 385-86.

information were not available or would not be effective, and (2) the need for disclosure outweighed the potential for harm to the patient, I.C. § 16-39-3-7.

[13]    Here, Mother did not follow the necessary procedures. Even if we assume her motion to compel discovery was a petition for release of the records under Indiana Code Section 16-39-3-3(2), Mother did not provide notice of the hearing to the provider, the hearing was not confidential, and Mother did not present evidence as to whether other reasonable methods of obtaining the records were unavailable or ineffective. The trial court properly informed Mother that she must follow the Title 16 procedures if she wished to obtain Father's mental health records,[6] and Mother failed to do so. The trial court did not abuse its discretion in granting Father's motion to quash.

### Issue Two: Best Interest of the Child Findings

[14]    At Mother's request, the trial court entered findings and conclusions pursuant to Indiana Trial Rule 52, and our standard of review in that situation is well settled:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not

---

[6] Thus, the trial court did not deny mother her due process right to present her case when it granted Father's motion to quash, as Mother claims in her brief. Rather, the trial court simply insisted that Mother use the proper procedures to obtain the records she deemed necessary to present her case. Mother's attorney acknowledged that Mother could "file a motion under Title 16, if the Court requires," but Mother inexplicably chose not to do so. Tr. at 10.

reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Estate of Kappel v. Kappel*, 979 N.E.2d 642, 651-52 (Ind. Ct. App. 2012) (quotation marks and citations omitted). Because Mother requested findings under Trial Rule 52, the trial court was required to make findings of fact on all issues in the case, including the best interest of the child. Ind. Trial Rule 52(A), (D); I.C. § 31-17-2-8. Mother contends that the trial court failed to do so. We disagree.

[15] In finding number eight and in the last sentence of conclusion number two,[7] the trial court stated that Child needed a custodial parent who would be supportive of his relationship with the non-custodial parent and that Father was the parent most likely to supply that supportive environment. These are findings of fact that consider and address what is in the best interest of Child.[8] The trial court

---

[7] The last sentence of conclusion number two is actually a finding of fact and is treated as such. *See Coachmen Industries, Inc. v. Crown Steel Co.*, 577 N.E.2d 602, 605 (Ind. Ct. App. 1991) (citing *In re Marriage of Miles*, 173 Ind. App. 5, 362 N.E.2d 171, 174 (1977), *trans. denied*) (holding facts not stated in findings may be supplied by conclusions of law).

[8] In fact, in making these findings, the trial court referenced the best interest standard of Indiana Code Section 31-17-2-8. Appellant's App., Vol. 2, at 18.

noted that it based those findings on "the evidence, the exhibits, and the GAL's report."[9] Appellant's App., Vol. 2, at 18. The GAL report contained information and recommendations that supported the trial court's findings of fact that Father would be more likely to foster an environment supportive of the non-custodial parent. And those findings of fact support the trial court's conclusion that it was in Child's best interest for Father to have sole physical custody. Thus, the trial court did make findings of fact on the issue of Child's best interest, and those findings support the judgment that Father should have sole physical custody of Child.

### *Issue Three: Consideration of the Relocation Statute*

[16] Mother maintains that the trial court erred when it failed to consider the factors contained in the relocation statutes in its custody determination. We cannot agree. First, the relevant statute, Indiana Code Section 31-17-2.2-2, does not *require* that a court consider the relocation factors[10] when making an initial custody determination; rather, the statute plainly states that the court *may* consider such factors. *Dillon v. Dillon*, 42 N.E.3d 165, 168 (Ind. Ct. App. 2015).

---

[9] Thus, the trial court did not simply state that the GAL "testified" that Father would foster a more supportive environment than Mother, as Mother claims in her brief. Appellant's Br. at 37. Rather, the trial court found as a fact that Father would foster a more supportive environment and it simply cited the GAL report as support for that finding. Appellant's App., Vol. 2, at 18.

[10] Those factors include the distance of the proposed change of residence and the expense involved for the non-relocating parent to have parenting time. I.C. § 31-17-2.2-1(b).

Therefore, even if the trial court had not considered the relocation factors, its failure to do so would not have been error.

[17]  Second, it appears from the findings and conclusions that the trial court did, in fact, consider the issue of relocation and distance when it made its custody determination. The GAL's fifty-five page report recounted in detail her observations from her extensive interviews with Child's parents and relatives and her visits to the homes in both Indiana and Arizona. The GAL report also addressed the traveling expenses that would be involved in parenting time for either parent, given the distance between their homes. The trial court considered this report in making its custody determination, and it adopted the GAL's recommendations regarding the long-distance parenting time. Thus, although it was not required to do so, the court clearly did consider relocation factors when it made its final judgment.

### Issue Four:  Child Support

[18]  Finally, Mother contends that the trial court abused its discretion when it calculated her child support obligation.[11] Child support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines. *Duckworth v. Duckworth*, 989 N.E.2d 352, 354 (Ind. Ct. App. 2013). These Guidelines apportion the cost of supporting children between the parents

---

[11] We held this appeal in abeyance and remanded to the trial court to provide a child support worksheet, which it did on October 18, 2016.

according to their means. *Id.* A calculation of child support under the Guidelines is presumed valid. *Id.* Therefore, we will not reverse a support order unless the determination is clearly against the logic and effect of the facts and circumstances. *Id.* When reviewing a child support order, we do not assess credibility or re-weigh evidence; we confine our review to the evidence and reasonable inferences therefrom favorable to the trial court's decision. *Id.*

[19] Mother contends that the trial court abused its discretion when it did not factor in the following circumstances in calculating her child support obligation: 1) the cost to her to care for her two prior-born children; 2) her work-related child care expenses; 3) travel expenses she will incur to visit Child in Arizona; and 4) her diminished income. We address each contention in turn.

*Prior-born Children*

[20] At the final hearing, Mother testified that she has two children from a prior relationship who live with her. And, while there is no court order in place regarding Mother's obligation to support those children, she correctly points out that she has a common law duty to support them. *See Boone v. Boone*, 924 N.E.2d 649, 652 (Ind. Ct. App. 2010). Mother maintains that Child Support Guideline 3(C)(3) requires that that financial obligation be deducted from her weekly gross income in calculating her weekly adjusted income. But Mother "bears the burden of proving the obligation and payment of the obligation" based upon "funds actually expended" on the two other children, and she does not direct us to any evidence in the record to show that she met that burden.

Ind. Child Support Guideline 3(C)(3) cmt. 3. Accordingly, absent any relevant evidence, Mother cannot show that the trial court abused its discretion when it did not deduct from her weekly gross income an amount related to her support for her two prior-born children.

*Child Care Expenses*

[21]    Mother maintains that the trial court abused its discretion when it provided a credit for child care expenses to Father for fifty-two weeks but none to Mother, who will have Child in her care approximately twelve weeks per year. Mother testified that she incurs child care expenses of $260 per week for Child during those twelve weeks. On appeal, Mother contends that she will incur those expenses because she will be working and in school. But Mother did not argue to the trial court that, should it award Father custody of Child, her child support obligation should be reduced by the amount she pays for child care during the twelve-week period. Moreover, while Mother states on appeal that Father "only pays [for work-related child care] for 39 to 40 weeks a year, not 52 as the trial court applied to him," Mother's citation to the record does not support that allegation. Appellant's Supp. Br. at 11. Without evidence showing that Father pays for less than fifty-two weeks of child care, Mother cannot show that the trial court abused its discretion on this issue.

*Travel Expenses*

[22]    The trial court has the discretion to deviate from the Guideline amount for child support to account for a parent's travel expenses in exercising parenting time.

*See Ashworth v. Ehrgott*, 934 N.E.2d 152, 164 (Ind. Ct. App. 2010). Mother testified that she cannot afford to travel to Arizona to exercise visitation with Child. But Mother did not present evidence regarding what her expenses would be for that travel, and she did not argue to the trial court that it should deduct travel expenses from her child support obligation in the event that the court awarded custody to Father. Because Mother did not present evidence showing how much it would cost her to exercise visitation and did not ask the trial court to account for travel expenses in its child support calculation, Mother has failed to preserve this issue for appellate review and the issue is waived.

*Income*

Mother contends that the trial court abused its discretion when it found her weekly gross income to be $480. In particular, Mother maintains that, because she testified that she was about to stop working full time and start working part time in order to go back to school, the trial court was required to find her weekly gross income to be "less" than $480. Appellant's Supp. Br. at 12. But, as the trial court found, Mother "presented no evidence as to the change in her Weekly Gross Income ('WGI') that would result from her schedule change." Oct. 18 Child Support Order at 2. Moreover, on her verified child support worksheet admitted as Petitioner's Exhibit 12, Mother stated that her WGI was $480. Accordingly, any error on this issue was invited by Mother, and she cannot now complain. *Duckworth*, 989 N.E.2d at 354. Mother has not demonstrated that the trial court abused its discretion when it calculated Mother's child support obligation.

## *Conclusion*

Because Mother failed to follow the correct statutory procedure for obtaining mental health records in a legal proceeding, the trial court did not abuse its discretion when it granted Father's motion to quash Mother's motion to compel discovery of such records. Nor did the trial court err when it made its findings of fact and conclusions of law; those findings address both the issues of Child's best interest and Father's relocation to Arizona. Finally, the trial court did not abuse its discretion when it calculated Mother's child support obligation.

Affirmed.

Vaidik, C.J., and Baker, J., concur.