

ATTORNEYS FOR APPELLANT

John S. Terry
Stephenie K. Gookins
Cate, Terry & Gookins LLC
Carmel, Indiana

ATTORNEY FOR APPELLEES

Charles P. Rice
Murphy Rice, LLP
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

L.G.,

*Appellant-Respondent,*

v.

S.L., et al.,

*Appellees-Petitioners.*

May 4, 2017

Court of Appeals Case No.
29A04-1607-AD-1756

Appeal from the Hamilton
Superior Court

The Honorable Steven R. Nation,
Judge

Trial Court Cause No.
29DOl-1511-AD-1454

**Najam, Judge.**

# Statement of the Case

This appeal arises from a discovery dispute between L.G. ("Father")[1] and S.L. and W.L. ("Adoptive Parents") that resulted in the dismissal of Father's motion to contest the adoption of his putative child, Infant Male R. ("Child"), and the trial court's entry of a decree of adoption. The overarching issue is whether Father caused undue delay in the proceeding when he objected to Adoptive Parents' repeated requests for the release of his mental health records. Adoptive Parents characterized Father's objections to their requests for those records as unjustified attempts to thwart and delay the adoption proceeding. But Father had a right to object to the unqualified release of his mental health records, and it was Adoptive Parents' failure to comply with the Indiana Code that delayed the proceeding until April 11, 2016. Nonetheless, the trial court dismissed Father's petition to contest the adoption on procedural grounds, which prevented Father from vindicating his parental rights.

We hold that the trial court erred when it dismissed Father's motion to contest the adoption. The record on appeal demonstrates that Father has been actively engaged in protecting his putative parental rights over Child. Father filed both a putative father affidavit and a petition to establish paternity before Child's birth. He then filed a motion to dismiss the adoption petition, a motion to

---

[1] For ease of discussion, we refer to L.G. as "Father" even though he is only the putative father. L.G. submitted a DNA test to the trial court to establish his paternity, but the court did not rule on his paternity petition.

contest the adoption, a petition to revoke Adoptive Parents' temporary custody of Child, and a petition for parenting time. He both propounded and responded to discovery, which included signing authorizations for the release of his mental health records following a hearing on Adoptive Parents' request for those records as required by statute. And, prior to the final hearing, he participated in two hearings in person and in other hearings by counsel or by telephone. In sum, Father did not unduly delay the proceeding.

[3]     On appeal, Father presents two issues for our review, which we restate as the following three issues:

> 1.     Whether the trial court erred when it found that Father had failed to timely provide complete discovery.
>
> 2.     Whether the trial court erred when it found that Father's failure to attend a motions hearing on April 22, 2016, in person warranted dismissal of his motion to contest the adoption.
>
> 3.     Whether the trial court erred when it found that Father's failure to attend his first scheduled deposition warranted dismissal of his motion to contest the adoption.

We also address one issue *sua sponte*:

> 4.     Whether the trial judge should recuse himself on remand.

We reverse and remand for further proceedings.[2]

## Facts and Procedural History

In September 2008, Father, who is from Senegal, moved to New Jersey to attend boarding school. Several years later, Father met A.R. ("Mother"), and the two began a romantic relationship. During 2014, Father and Mother lived together in Indianapolis and in Sewickley, Pennsylvania, and the couple had a daughter together. In August 2014, Father enrolled in college at Robert Morris University near Pittsburgh, Pennsylvania, but he continued to visit Mother and their daughter, who were then living in Indiana, on weekends and during breaks from school.

At some point, Mother became pregnant with Child. During the pregnancy, in the Fall of 2015 Mother told Father that she intended to place Child for adoption. On October 23, prior to the birth of the Child, Father filed a petition to establish paternity in the Marion Superior Court.

On November 7, Mother gave birth to Child in a hospital in Fishers, but she did not immediately notify Father about Child's birth. When Mother eventually did tell Father about the birth and the pending adoption, Father wrote what the Adoptive Parents characterize as "a suicide letter," which Father gave to

---

[2] We heard oral argument in this case on March 27, 2017. Normally, such arguments are available to the public online. However, because the parties referred to each other, and Child, by name at the oral argument, we have not posted the video recording of that argument online.

"administrators" at his college "and directed that a copy be sent" to Mother. Appellant's App. Vol. II at 213. Father was "subsequently admitted to a hospital for a mental health evaluation."[3] *Id.*

[8] On November 9, Adoptive Parents filed their petition to adopt Child in the Hamilton Superior Court, and the court thereafter consolidated Father's paternity action with the adoption proceeding. In their petition, Adoptive Parents alleged in relevant part that Father's consent to the adoption was unnecessary under Indiana Code Section 31-19-9-12[4] because he was "unfit to be a parent." *Id.* at 21. On November 19, Father filed a motion to dismiss the adoption petition. And, on November 30, Father timely filed his motion to contest the adoption in the trial court. In the meantime, the trial court awarded temporary custody of Child to Adoptive Parents.[5]

[9] On December 15, the trial court held a hearing on Father's motion to dismiss and denied that motion, and the court denied Father's motion to stay the final hearing on the adoption petition. The court also granted the parties until January 11, 2016, to respond to discovery requests and ordered Father "to immediately review" authorizations permitting Adoptive Parents to obtain his

---

[3] While the existence of the letter and Father's subsequent admission to a hospital for a mental health evaluation are not disputed, there is no evidence in the record on appeal regarding these events, including either the contents of the letter or the results of the mental health evaluation.

[4] This statute applies to the rights of putative fathers rather than fathers whose paternity has been established.

[5] Father filed a petition for revocation of temporary custody and a petition for parenting time, but a hearing on those petitions has not yet been held.

mental health records and "to determine" if he had objections to those requests. *Id.* at 6. The court set a hearing on Father's motion to contest the adoption for April 25, 2016.

[10] On January 11, 2016, Father submitted his responses to Adoptive Parents' thirty-four interrogatories and forty-four requests for production of documents, including more than 2,000 pages of documents. In response to Adoptive Parents' request for information and documentation regarding Father's health, including his mental health, Father objected on the grounds that those requests sought "information, diagnoses, treatment, and records protected by the physician-patient privilege, protected by HIPAA, and [also] protected by the Indiana 39-1-1, et seq. [sic]." *Id.* at 46. Father also objected to several of the other requests for production and interrogatories on the grounds that they were overbroad[6] and/or sought privileged information. On January 15, Father filed a motion to quash subpoenas to nonparties that Adoptive Parents had submitted in an effort to obtain information including his mental health records. On February 1, Adoptive Parents filed a motion to compel discovery. While that motion was pending, Father responded to a second set of discovery requests from Adoptive Parents.

---

[6] For example, Father objected to Interrogatory No. 6, which requested that he list details regarding every health-related appointment for the past *ten years*, including visits to chiropractors, dentists, and orthodontists. Father also objected to Interrogatory No. 9, which requested that he "list each and every time [he] consumed alcoholic beverages within the last five (5) years," including the date, place, and time of consumption, the names of people Father was with when he drank, and the type and number of alcoholic beverages consumed on each occasion. Appellant's App. Vol. II at 67.

[11]     Following a telephonic hearing on February 29, on March 9 the trial court entered an order denying Father's motion to quash subpoenas, granting Adoptive Parents' motion to compel discovery, setting for a hearing Father's petition for revocation of temporary custody and petition for parenting time for April 25, and setting a discovery deadline of April 18. In addition, the court ordered Father to sign authorizations for the release of his medical, mental health, school, and employment records.

[12]     On March 15, Father filed a motion to continue the evidentiary hearing on his motion to contest the adoption on the grounds that the discovery deadline of April 18 did not provide sufficient time to prepare for the hearing. Also on March 15, Father filed a motion to reconsider and for a stay of its March 9 order. In that motion, Father reiterated his objections to releasing information regarding his mental health and alleged that the subpoenas proffered by Adoptive Parents were overbroad in that they sought information regarding Father's mental health. Father alleged that the trial court's March 9 order did not comply with "the procedures and protections set forth in Indiana Code § 16-39-3-1 et[] seq. (2015) regarding a Court Order for the release of [mental health] records over the objection of a party." *Id.* at 86. In particular, Father requested a hearing required by statute, *see* I.C. § 16-39-2-8, regarding, among other things, the need for the requested records.

[13]     On March 21, the trial court held a hearing on Father's motion to reconsider and for a stay. During that hearing, although they had not filed a petition for the release of Father's mental health records under Indiana Code Section 16-39-

3-3, Adoptive Parents moved the trial court to dismiss Father's motion to contest the adoption. Adoptive Parents' motion was based on Trial Rule 37, as a sanction of dismissal for discovery violations, and Indiana Code Section 31-19-10-1.2, for Father's alleged failure to prosecute the motion to contest the adoption without "undue delay." The trial court denied that oral motion.

[14] Instead, following the hearing, on March 23 the court issued an order *granting* Father's motion to reconsider "as to the Mental Health Records" and stating:

> c. That concerning Mental Health Records, the Court deems the Motion to Compel filed on February 1, 2016[,] by the Petitioners to be a Petition for Release of Mental Health Records pursuant to I.C. [§] 16-39-3-3.
>
> d. That pursuant to I.C. [§] 16-39-3-4 the Petitioners must provide Notice to 1) the patient, 2) the guardian . . . , and 3) the provider that maintains the record or the attorney general if the provider is a state institution.

*Id.* at 101. The court then set a hearing "concerning the Release of Mental Health Records" for April 11. *Id.* Still, the trial court denied Father's motion to reconsider "in all other respects" and ordered Father to "respond on or before March 31, 2016, concerning any and all other outstanding discovery and/or shall provide any and all requested authorizations as set forth in the Order filed on March 9, 2016." *Id.* at 102. On March 28, Father filed his motion for a finding of paternity, to which he attached a copy of the paternity DNA test results that appeared to show that he is Child's biological father. And Father filed a motion for interpreter under Indiana Code Section 34-45-1-1.

[15] On April 11, the date of the statutory hearing on the release of Father's mental health records, Adoptive Parents filed their Supplement to Motion for Sanction of Dismissal Under Trial Rule 37 and Indiana Code Section 31-19-10-1.2(g) for Failure to Prosecute. In that filing, Adoptive Parents alleged that Father had failed to cooperate with discovery when he refused to execute authorizations for the release of records concerning mental health treatment, drug and alcohol treatment, and HIV/AIDS status. Adoptive Parents also stated that Father had been "intentionally thwarting [their] legitimate discovery requests for these records" and had, "at every turn, intentionally obstructed the necessary and legitimate discovery of this evidence and the ability to obtain a timely determination of the Motion to Contest." *Id.* at 132. Adoptive Parents alleged that Father "has been throwing sand in the gears from day one" and had "sought to delay these proceedings" by, among other means, moving to transfer venue, moving for the trial judge to recuse, moving for an interpreter, moving to quash subpoenas, and refusing to respond to interrogatories and requests for production. *Id.*

[16] During the hearing on April 11, the trial court heard argument on Father's motion for an interpreter and denied that motion, finding it "groundless and frivolous" and finding that it was "filed so as to cause delay."[7] Appellees' App.

---

[7] Father's motion for an interpreter did not request that any scheduled hearing be delayed, only that the trial court appoint him an interpreter "for all matters before this Court." Appellees' App. Vol. II at 10. In the motion, Father stated that his native language is French; that he required an interpreter "in order to be effectively represented in the Court proceedings"; that Adoptive Parents' attorney had "previously claimed he

Vol. II at 16. Also during that hearing, Adoptive Parents again argued that Father's adoption contest should be dismissed for his failure to "execute all the necessary authorizations" for obtaining his mental health records, as well as records for any treatment involving alcohol, drugs, communicable diseases, and/or HIV/AIDS. *Id.* at 17. Father's counsel responded that "she understood that the Court's grant[] of her Motion to Reconsider . . . gave her the opportunity to argue [at the April 11 hearing] whether the mental health records would be ordered produced, and if not, such authorizations would not be necessary." *Id.*

[17] In an order issued on April 12, the trial court clarified that, "although the Court was to decide whether such records were to be disclosed, [Father] had to provide authorizations so as to not delay these proceedings." *Id.* at 17-18. In other words, the trial court ordered Father to execute authorizations for the release of his mental health records *before* the statutory hearing to determine whether and to what extent those records were discoverable. And the trial court found that Father's "failure to provide such authorizations and/or discovery have created a delay in the proceedings." *Id.* at 18. Accordingly, while the trial court denied Adoptive Parents' motion to dismiss, the court advised Adoptive Parents that they could "ask the Court to reconsider such ruling in the event any more delays are created by the actions or by a failure to

_____

has difficulty understanding [Father]"; that he is entitled to an interpreter under Indiana Code Section 34-45-1-1; and that he cannot afford an interpreter. *Id.* Adoptive Parents do not explain how Father's motion for interpreter would have caused any delay.

act by" Father or his counsel. *Id.* The trial court further found that, "based upon the testimony[,] . . . [Father's] Mental Health Records should be and are hereby Ordered released and [Father] shall sign such authorizations and/or provide such discovery pursuant to the previously-entered Protective Order. . . ." *Id.* And the trial court granted Father's motion to continue the evidentiary hearing on his motion to contest the adoption that had previously been set for April 25. The trial court did not reschedule the hearing.

[18] That same day, April 12, Adoptive Parents filed a motion to reconsider the trial court's April 12 order

> requesting that the Court reconsider and proceed with the hearing set April 25, 2016, imposing a lesser sanction than dismissal by having the Court take the position that the medical and mental health records are deemed as having an adverse inference to the biological father in terms of fitness. Additionally, counsel for Petitioners requested that [Father] be barred from introducing any evidence to the contrary.

Appellant's App. Vol. II at 147. The trial court set that motion for a hearing on April 22. In addition, the parties agreed and the court ordered that Adoptive Parents would take Father's deposition in Indianapolis "on or before April 18, 2016, and/or by agreement of the parties." *Id.* at 218. The day following the trial court's April 12 Order, Father's counsel attempted to transmit by facsimile Father's mental health records, but the facsimile transmission was terminated by the receiving party. Also on April 13, as ordered, Father provided to Adoptive Parents signed authorizations for release of his mental health records.

On April 14, Father filed his Combined Response to Petitioners' Motion to Reconsider, Motion to Dismiss Petitioners' Motion to Reconsider, Motion to Dismiss Petitioners' Petition for Adoption as a T.R. 37 Sanction, and Notice of Clerical Error in April 12, 2016, Court Order. In that response, Father alleged in relevant part as follows:

• Adoptive Parents did not file a petition under Indiana Code Section 16-39-3-3 for release of Father's mental health records after Father objected to discovery of those records. Rather, on March 23, 2016, the trial court deemed Adoptive Parents' February 1 motion to compel to be a petition for Father's mental health records under the statute.

• The morning of March 24, Father provided to Adoptive Parents the information regarding his health care providers. But Father signed authorizations for the release of his health care records excluding his mental health records in light of the trial court's order setting the matter of his mental health records for a hearing on April 11.

• Father's first motion to recuse was based on the fact that Adoptive Parents' attorney, during the pendency of this case, "had written and submitted a letter of reference for the Judge in this matter," which "recommendation has a chilling effect upon [Father's] confidence that he will receive a fair and unbiased hearing in this matter."

• Adoptive Parents' "repeated refusal to meet with the requirements of Indiana Code [Section] 16-39-3-1 is an unreasonable delay by [Adoptive Parents] and [their] failure to respond to [Father's] request for production of documents and interrogatories[,] even after the Court entered an order of protection and specifically ordered [Adoptive Parents] to do so, is an unreasonable delay and without a legitimate basis[.]"

*Id.* at 150-65.

[20] During the evening of April 17, Father contacted his attorney, Rakuya Trice, an attorney with Indiana Legal Services, to inform her that he was having "transportation issues" and could not travel from Pittsburgh to Indianapolis in time for the deposition scheduled for the morning of the next day. *Id.* at 198. At 9:17 p.m. that night, Trice emailed Adoptive Parents' attorney, Charles Rice, to advise him that Father might not be able to attend the deposition, and Trice asked whether they could reschedule the deposition for later in the week. Rice told Trice that he had already arrived in Indianapolis and checked into his hotel and that he expected Father to attend the deposition. Trice then asked, by email, whether the deposition could be rescheduled from the morning to the afternoon of April 18, but Rice refused.

[21] In an email during the morning of April 18, Trice asked whether Father could appear for the deposition by telephone or whether it could be rescheduled. Rice responded: "Given [Father's] pattern of obstruction and delay in this case, no." *Id.* at 195. And Rice stated that, if Father did not show up for the deposition by 10:30, one hour after the original start time, Rice would "close the record and move for dismissal." *Id.* In response to that email, in an email sent at 8:15 a.m. on April 18, Trice wrote as follows:

> [Father] has not engaged in any obstruction. This is a transportation issue. He has incurred many expenses responding to your discovery which your clients haven't reimbursed. He was present, due to your objections to him [sic] appearing at the hearing by telephone, at the hearing on April 11 and has to be

present in person on April 22nd due to your objections to him [sic] appearing by telephone at the hearing. You are aware he is a college student and eligible for [representation by Indiana Legal Services]. He is available by telephone and as stated is willing to reschedule. He cannot be present by 10:30 a.m.

*Id.* Rice did not agree to conduct the deposition over the telephone or to reschedule the deposition for later in the same day or at any other time.

[22] After Father did not appear for his deposition, on April 18 Trice filed a motion to withdraw as Father's attorney, which the trial court granted. Father did not appear in person for the April 22 hearing, which was set to address various pending motions other than Father's motion to contest the adoption. Father did appear by telephone[8] at the April 22 hearing and asked that new counsel be appointed to represent him. Father also asked that the hearing be continued. The trial court appointed new counsel for Father, and Father's new counsel also moved to continue the April 22 hearing. The trial court granted that motion over Adoptive Parents' objection. The trial court set a hearing for May 10 to address Adoptive Parents' motion to dismiss Father's motion to contest the adoption, and the court ordered Father to show cause why his motion to contest the adoption should not be dismissed for failure to comply with discovery orders.

---

[8] The CCS states that Father "appeared by telephone and requested appointment of counsel." Appellant's App. Vol. II at 15.

[23] At the hearing on May 10, Father appeared in person and by counsel. After argument by both parties' attorneys, Father testified regarding his participation in the discovery process and the reasons for his failure to appear for his deposition. After the hearing concluded, the court asked attorneys for both parties to submit proposed orders.

[24] Six weeks later, on June 23, the trial court entered an order dismissing Father's motion to contest the adoption and concluding that his consent to the adoption was implied by statute. The trial court's order included the following findings and conclusions:

> 21.    *The Court . . . finds that [Father's] course of frivolous objections to the production of mental health records was designed to impede the ability of the Adoptive Parents [to] try this case on April 25, 2016.*
>
> * * *
>
> 32.    [Father] failed, without justifiable cause, to appear for his deposition which was properly noticed and set for April 18, 2016.
>
> * * *
>
> 38.    Judging [Father]'s credibility and all of the inferences from the evidence presented, the Court finds that [Father] has not shown cause why his Motion to Contest should not be dismissed for:
>
> > •    a failure by [Father] to appear at his deposition on April 18, 2016;
> >
> > •    a failure by [Father] to appear at the hearing on April 22, 2016, and/or

- a failure to provide complete discovery.

\* \* \*

41.    [Father]'s actions are deserving of dismissal.  Given [Father]'s history of threatening suicide, [Father] was keenly aware that his mental health records would be important evidence in this case.  By intentionally hindering the Adoptive Parents' legitimate discovery requests for these records, [Father] has impeded the ability of the Adoptive Parents to present crucial evidence regarding [Father]'s Mental Health.  This Court concludes that [Father] has consistently and intentionally obstructed the necessary and legitimate discovery and the ability to obtain a timely determination of the Motion to Contest.  Moreover, [Father] continued his pattern of non-cooperation and delay in the face of clear Warnings from this Court that further delay would result in dismissal of his Motion to Contest.  [Father]'s failure to attend his deposition and subsequent failure to attend the hearing set for April 22, 2016[,] are the final straw.

\* \* \*

43.    In adoption cases, if the court finds that a father is failing to [p]rosecute a challenge to the adoption without undue delay, the Court shall dismiss any challenge to the adoption and the person's consent to the adoption shall be irrevocably implied.  I[.]C[. §] 31-19-10-1.2(g). . . .  [Father] has failed to prosecute his Motion by the actions he has taken or failed to take.

44.    I[.]C[. §] 31-19-9-12(2) further provides that a putative father's consent to adoption is irrevocably implied without further court action if the putative father "having filed a motion to contest the adoption in accordance with I[.]C[. §] 31-19-10, fails to appear *at the hearing set to contest the adoption*.["]  [Father] failed, without justifiable cause, to appear in court on April 22, 2016 despite being ordered to appear personally.

* * *

It is therefore ORDERED as follows:

1.     The Motion to Contest filed by [Father] is dismissed, with prejudice.

2.     [Father]'s consent to the adoption is irrevocably implied pursuant to I[.]C[. §] 31-19- 9-12(2) I[.]C[. §] 31-19-10-1.2(g) and I[.]C[. §] 31-19-9-18(a) and (b).

* * *

7.     The Court further finds pursuant to Trial Rule 54 that there is no just reason for delay and directs that this order shall be a final judgment as to [Father].

*Id.* at 217-24 (emphases added).  On July 20, the trial court issued the adoption decree.  This appeal ensued.

# Discussion and Decision

## *Overview*

[25]     Father's putative parental rights over Child are at stake in this litigation.  Father has expressed his unwavering desire to be a parent to Child.  Father filed his putative father affidavit and his petition to establish paternity before Child's birth and before Adoptive Parents' petition for adoption.  The paternity and adoption proceedings were subsequently consolidated.  Father then petitioned the trial court to revoke Adoptive Parents' custody of Child and, in the alternative, for parenting time.  Father submitted to the trial court a DNA test that appears to show that he is Child's biological father.  But the trial court did

not rule on those petitions. Instead, the court dismissed Father's motion to contest the adoption and his petitions to establish paternity and custody, which terminated Father's putative parental rights.

[26] Writing for a unanimous Indiana Supreme Court, Chief Justice Rush recently emphasized that "[f]ew liberties are as central to our society as the right of parents to raise their children. Our General Assembly has thus set a high bar for terminating parental rights[.]" *D.B. v. Ind. Dep't of Child Servs. (In re Bi.B.)*, 69 N.E.3d 464, 465 (Ind. 2017). In *R.S. v. Marion County Department of Child Services (In re R.S.)*, 56 N.E.3d 625, 628 (Ind. 2016), our Supreme Court further stated:

> As this Court and the United States Supreme Court have reiterated many times, "[a] parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Bester v. Lake Co. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Although parental interests are not absolute, "the parent-child relationship is 'one of the most valued relationships in our culture.'" *Id.* at 147 (citing *Neal v. DeKalb Cty. Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)).

[27] A natural parent enjoys a presumptively superior right over a nonparent to custody of a child, and a third party who seeks to displace a parent as custodian always bears the burden of overcoming the parent's superior right. *McIntyre v. Medaris* (*In re M.D.*), 612 N.E.2d 1068, 1074 (Ind. Ct. App. 1993), *trans. denied*. A petitioner for adoption must prove by clear and convincing evidence both

that the parent is unfit to be a parent and that it would be in the best interests of the child for the court to dispense with the parent's consent. Ind. Code § 31-19-9-8(a) (2017); *Evans v. Murray (In re M.A.S.)*, 815 N.E.2d 216, 219 (Ind. Ct. App. 2004).

[28] The primary issue on appeal is whether Father's conduct during the discovery phase of this litigation warranted dismissal. As explained below, it was Adoptive Parents, not Father, who caused the delays between January 11, 2016—when Father lawfully objected to the unqualified release of his mental health records—and April 11, 2016—when the court finally held the hearing required under the statute to determine whether those records should be released. Our review of the record, as well as oral argument, leave us convinced that counsel for Adoptive Parents pursued an unrelenting narrative that unfairly characterized Father as dilatory and uncooperative. The trial court agreed with Adoptive Parents and, after Father failed to appear for his first scheduled deposition and in person for a motions hearing, the court dismissed Father's motion to contest the adoption.

### *Standard of Review*

[29] Father appeals the trial court's order dismissing his motion to contest the adoption under Trial Rule 37 and Indiana Code Section 31-19-10-1.2(g) following an evidentiary hearing. Trial Rule 37 provides

> broad latitude for the trial court to impose sanctions to ensure
> cooperative discovery, and thus encompasses remedies which
> may be sought by or imposed against either party. *See* Ind. Trial

Rule 37 ("Failure to make or cooperate in discovery: Sanctions"). Trial Rule 37(B) permits the trial court to "make such orders . . . *as are just*," including "treating as a contempt of court the failure to obey," "prohibiting [the disobedient party] from introducing designated matters into evidence," "dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party" when that party "fails to obey an order to provide or permit discovery." T.R. 37(B).

*Wright v. Miller*, 989 N.E.2d 324, 327 (Ind. 2013) (emphasis added). Similarly, Indiana Code Section 31-19-10-1.2(g) provides in relevant part that, if a court finds that the person who filed the motion to contest the adoption has failed to prosecute the motion without undue delay, the court shall dismiss the motion to contest with prejudice. The trial court relied on both Trial Rule 37 and Indiana Code Section 31-19-10-1.2(g) when it dismissed Father's motion to contest the adoption.

[30] Both grounds for the court's judgment turn on the court's findings and conclusions related to Father's alleged delays in releasing his mental health records, his failure to appear in person for a motions hearing, and his failure to appear for his first scheduled deposition. Because the court's judgment follows an evidentiary hearing on Adoptive Parents' motion to dismiss, and because the court entered findings and conclusions based on the evidence presented at that hearing, we review the court's judgment under our clearly erroneous standard

of review.[9]  We review the issues covered by the findings with a two-tiered standard of review that asks whether the evidence supports the findings and whether the findings support the judgment.  *See Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016).

[31]  In Finding 38, the trial court concluded that dismissal was warranted based on the following three facts found by the court:

- Father's "failure to provide complete discovery";

- Father's failure to appear at the April 22, 2016, hearing; "and/or"

- Father's failure to appear at his deposition on April 18, 2016.

Appellant's App. Vol. II at 220.  The court emphasized Father's "pattern of non-cooperation and delay" in the face of the requests for his mental health records and characterized Father's failure to appear in person at the April 22 hearing and at his deposition as "the final straw."  *Id.* at 222.  Those findings were the basis for the court's judgment under both Trial Rule 37 and Indiana Code Section 31-19-10-1.2(g).

---

[9]  While a trial court's ruling on discovery matters is usually reviewed for an abuse of discretion, because this appeal is taken from the court's findings and conclusions following an evidentiary hearing, the clearly erroneous standard is the appropriate standard of review here.

[32]     Accordingly, on appeal Father contends that (1) he is not at fault for the delay in the release of his mental health records; (2) his failure to attend the April 22 motions hearing in person did not warrant dismissal; and (3) his failure to appear at his deposition did not warrant dismissal. We address each of those three issues in turn.[10] We then consider, *sua sponte*, whether the trial judge should recuse himself from this proceeding on remand.

### Issue One:  Mental Health Records

[33]     Father maintains that the trial court's conclusion that he is responsible for the delay in obtaining his mental health records is clearly erroneous. In particular, Father asserts that, because Adoptive Parents did not comply with Indiana Code Section 16-39-3-3 until March 23, 2016—when the trial court deemed their motion to compel as a petition to release mental health records—and because the court scheduled a hearing on that petition for April 11, Adoptive Parents, not Father, are responsible for the delay in obtaining those records prior to April 11. Thus, Father continues, the trial court erred when it attributed that delay to Father and dismissed his motion to contest the adoption, in whole or in part, on that basis. We must agree.

[34]     "Discovery of mental health records [is] subject to the particularized requirements" of Indiana Code Chapters 16-39-2 and -3. *See Williams v. State*,

---

[10]  To the extent the trial court based its dismissal on Father's motions to recuse and motion for an interpreter, there is no evidence in the record that those motions caused any undue delay and, as such, they cannot support dismissal. In any event, in Finding 38, the trial court lists only three bases for the dismissal, none of which relate to Father's motions to recuse or request for an interpreter.

819 N.E.2d 381, 385 (Ind. Ct. App. 2004), *trans. denied*. Indiana Code Section 16-39-2-3 provides in relevant part that a patient's mental health record is confidential and shall be disclosed only with the consent of the patient unless otherwise provided in Indiana Code Chapters 16-39-2 and -3. In his discovery responses on January 11, Father objected to the unqualified release of his mental health records. Adoptive Parents were then required to file a petition for release of the records, I.C. § 16-39-3-3(2), and provide notice to Father and the mental health providers of a hearing on that petition, I.C. § 16-39-3-4. Then the trial court was required to hold a confidential hearing, I.C. § 16-39-3-6, and make findings that (1) other reasonable methods of obtaining the information were not available or would not be effective, and (2) the need for disclosure outweighed the potential for harm to the patient, I.C. § 16-39-3-7.[11]

[35]    At oral argument counsel for Adoptive Parents initially asserted that whether they had complied with the mental health records statutes was a "red herring" and was, at most, "harmless error." We think not. Indeed, counsel for Adoptive Parents ultimately conceded both that Father had a right to insist on

--------

[11] In their brief on appeal, Adoptive Parents make much of the fact that Father "*now* concedes his mental health was a central issue in the trial court proceedings." Appellees' Br. at 23. But Adoptive Parents are incorrect that, merely because his mental health is at issue, Father has no right to object to the release of his mental health records without a hearing. Quoting *Owen v. Owen*, 563 N.E.2d 605, 608 (Ind. 1990), Adoptive Parents assert that "in child custody proceedings, the mental and physical health of all parties involved become subjects for consideration by the trial court." Appellees' Br. at 23. But *Owen* was decided three years before the effective date of Indiana Code Section 16-39-3-3, which requires a party seeking mental health records over an objection to file a petition, and Indiana Code Section 16-39-3-7, which sets out what findings a trial court must make following a hearing on the petition. In essence, Adoptive Parents argue that they can nullify the confidentiality of a mental health patient's records by simply asserting that the patient's mental health is at issue. This argument disregards Indiana Code Chapters 16-39-2 and -3, and we reject it.

compliance with the Indiana Code's provisions regarding the discovery of mental health records and that it was Adoptive Parents' burden to comply with those statutes.

[36] But Adoptive Parents never filed the petition required by Indiana Code Section 16-39-3-3(2).[12] Instead, on March 23, some seven weeks after-the-fact, the trial court "deemed" Adoptive Parents' February 1 motion to compel to be a petition for Father's mental health records under Section 16-39-3-3 and set a hearing on that petition for April 11.[13] As such, the delay in obtaining Father's mental health records to that date is not attributable to Father. Rather, the delay until April 11 is due to Adoptive Parents' noncompliance with the Indiana Code and, thus, is wholly attributable to them.

[37] In its findings, and throughout the course of the proceeding, the trial court attributed the delay in the production of the mental health records to Father. For instance, in its April 12 order, the trial court stated that Father's failure to provide signed authorizations for the release of his mental health records before the April 11 hearing "have created delay in the proceedings." Appellees' App. Vol. II at 18. And, in the dismissal order, in Finding 21 the court found that

---

[12] We note that, at oral argument counsel for Adoptive Parents claimed that any error with regard to the violation of the mental health records statutes has been waived by Father for failure to raise it on appeal. But in his brief, Father makes cogent argument with citations to Indiana Code Chapter 16-39-3 and this court's opinion in *Buford v. Flori Roberts, Inc.*, 663 N.E.2d 1159 (Ind. Ct. App. 1996), which is direct authority on this issue. In their brief, Adoptive Parents did not argue waiver, but wholly failed to address Father's argument under the relevant statutory and case law.

[13] Further, the trial court does not appear to have made the necessary findings under the statute before ordering Father to disclose his mental health records. I.C. § 16-39-3-7.

Father's "course of frivolous objections to the production of mental health records was designed to impede the ability of the Adoptive Parents [to] try this case on April 25, 2016." Appellant's App. Vol. II at 217.

[38] We hold that the trial court's findings that Father's "frivolous objections" to the production of his mental health records caused undue delay in the proceedings are clearly erroneous and do not support dismissal of Father's motion to contest the adoption. As a matter of law, Father was entitled to object to Adoptive Parents' demands for the unqualified release of his confidential mental health records until they had filed a petition and requested a hearing in compliance with the Indiana Code. Father's objections were based upon the unambiguous command of the statute enacted by our legislature and supported by this court's precedent. *See Buford*, 663 N.E.2d at 1161; *Williams*, 819 N.E.2d at 385-86. Adoptive Parents were responsible for the delay in obtaining Father's mental health records until April 11, the date of the hearing on their petition, and Father had complied with all other discovery requests by that time.[14]

[39] We decline to endorse a double standard. To the extent that Father may be responsible for delay in completing other discovery, such delay was not significantly greater than the delay that Adoptive Parents undeniably caused by

---

[14] In their brief on appeal and at oral argument, Adoptive Parents' argument on this issue focuses on Father's alleged failure to timely authorize the release of his mental health records. To the extent Father may have otherwise failed to timely comply with discovery requests, the evidence does not support dismissal on those grounds. In any event, counsel for Adoptive Parents acknowledged that Father had complied with all other discovery requests by March 28, 2016.

their failure to comply with Indiana Code Chapters 16-39-2 and -3.  The trial court's conclusion that dismissal was warranted because of Father's failure to provide complete discovery without undue delay is not supported by the evidence and is clearly erroneous.

### Issue Two:  Failure to Appear at April 22 Hearing

[40]    Father also contends that the trial court erred when it dismissed his motion to contest the adoption based, in whole or in part, on his failure to appear in person at the April 22 motions hearing.  On this issue, the trial court concluded in relevant part that

> I[.]C[. §] 31-19-9-12(2) further provides that a putative father's consent to adoption is irrevocably implied without further court action if the putative father "having filed a motion to contest the adoption in accordance with I[.]C[. §] 31-19-10, fails to appear at *the hearing set to contest the adoption*.["]  [Father] failed, without justifiable cause, to appear in court on April 22, 2016[,] despite being ordered to appear personally.

Appellant's App. Vol. II at 223 (emphasis added).  We must conclude that the trial court's judgment on this issue is also clearly erroneous.

[41]    The record shows, unequivocally, that the April 22 hearing was *not* the hearing set to contest the adoption and, therefore, that Indiana Code Section 31-19-9-12(2) is inapplicable.  Rather, while the trial court had initially set the final hearing for April 25, on Father's motion to continue the court postponed the hearing for a date to be determined.  The April 22 hearing was set to address various motions, *see* Appellant's App. Vol. II at 148-49, but not Father's motion

to contest the adoption. At oral argument, Adoptive Parents' counsel agreed that the April 22 hearing was a hearing on other motions.

[42]  Further, to the extent Adoptive Parents fault Father for not appearing at the April 22 hearing despite the trial court's order that Father appear in person, the CCS shows that Father called the court and appeared by telephone. And Father moved to continue the hearing and requested that the court appoint him new counsel. Father was entitled to counsel in this proceeding, *see Brooks v. McGee (In re G.W.B.)*, 776 N.E.2d 952, 954 (Ind. Ct. App. 2002), and the court granted both Father's request for counsel and the motion to continue.

[43]  We hold that the trial court's Finding 44, which refers to the April 22, 2016, hearing as "the hearing set to contest the adoption," is clearly erroneous. Despite the trial court's order that Father appear in person at the April 22 motions hearing, Father's failure to appear in person at that hearing does not support dismissal of his motion to contest the adoption and, in effect, a termination of his putative parental rights. Father appeared by telephone, requested new counsel, to which he was entitled, and the trial court granted Father's and his new counsel's motions to continue the April 22 hearing. Adoptive Parents have not shown that they were unduly prejudiced by Father's failure to appear in person at the motions hearing. The trial court erred when it based its dismissal of Father's motion to contest the adoption on Father's failure to appear in person at the April 22 motions hearing.

### Issue Three:  Failure to Appear at Deposition

[44]  Counsel for Adoptive Parents concluded his oral argument by stating that, "irrespective of what happened with the mental health records," Father's appeal "comes down to a question of whether [he] failed to appear for his deposition" and whether the trial court was entitled to dismiss on that ground.  Father maintains that, because his putative parental rights are at stake in this proceeding, dismissal for his failure to appear at his first scheduled deposition on April 18, 2016, was unjust and did not warrant dismissal.  We must agree with Father.

[45]  As Father points out, he lives approximately five and one-half hours away from Indianapolis, does not own an automobile, and depends on others for transportation to Indianapolis.[15]  And, as Father also notes, "[b]efore this deposition, Father had not failed to appear, either in person or by counsel, for any matter in this case."  Appellant's Br. at 11.  It is undisputed that Father did not merely fail to attend the deposition without explanation.  Rather, he contacted his attorney, Trice, the night before to let her know that his planned transportation to Indianapolis had fallen through.  Trice, in turn, immediately contacted Rice and asked that the deposition be rescheduled later in the week.  Rice refused.  Trice then asked that Father give the deposition over the

---

[15]  Adoptive Parents make much of the fact that Father had money to gamble and go to a strip club.  There is no dispute that, rather than relying on a friend to arrange transportation by car to Indianapolis, Father could have purchased a bus ticket.  But that is not the question on appeal.  Rather, the question here is whether his failure to appear, without more, warrants dismissal and, in effect, a termination of his putative parental rights.

telephone or, in the alternative, that the deposition be rescheduled for the afternoon of April 18, but Rice categorically refused.

[46]     At the May 10 hearing, Father testified as follows with regard to the missed deposition:

> Q:  Have you, let's talk about the day before the deposition. What happened on April 17, 2016?
>
> A:  Well, when I knew that the deposition was going to be videotaped, I asked her whether it's common for that to happen and she said yeah.  And I told her that I didn't really want to be videotaped to be honest, but I would attend the deposition.  And what happened that day is that the person who usually like help [sic] me rent a car which makes it cheaper for me to be able to travel back and forth since I have to attend two hearings in a short period of time, the deposition and then the hearing following I think April 22nd or 18th, I don't remember.  But, yeah, she didn't respond to my text.  What she said was she lost her phone at her sister's house and she texted me the next day.  I tried that night to come . . . .
>
> Q:  Were you trying to get transportation to Indiana?
>
> A:  Yeah, I actually did, yeah, look up the bus ticket.  It was, there was one like $100 one way at 7 p.m. leaving Pittsburgh to get to Indiana like the next, I guess at 2 a.m.  I checked at around 6:30-ish and I couldn't take that one for sure because coming to, I didn't have like the funds or I did, like $400 funds in my account at that time.  If I would have taken the Greyhound or the bus at 7, it would have cost me $200 and then I would get here at 2 a.m. and wouldn't found [sic] my way, I didn't have a place to stay then or a hotel to stay because I didn't have the right funds.  *I asked for Ms. Trice to ask Mr. Rice if they can extend it to the afternoon of the deposition day and he rejected our request*.

Tr. at 29-30 (emphasis added).

[47] In support of his contention that dismissal of his motion to contest the adoption based on his failure to attend his deposition is unjust, Father cites this court's opinion in *Nagel v. Northern Indiana Public Service Company*, 26 N.E.3d 30, 39-40 (Ind. Ct. App. 2015), *trans. denied*, where we stated as follows:

> In determining the appropriateness of default judgment as a discovery sanction, there is a marked preference in Indiana for deciding disputes on their merits, "'especially in cases involving material issues of fact, substantial amounts of money, or *weighty policy determinations*.'" *Wright v. Miller*, 989 N.E.2d 324, 328 (Ind. 2013) (quoting *Charnas v. Estate of Loizos*, 822 N.E.2d 181, 185 (Ind. Ct. App. 2005)). Courts should not apply an "overly formulaic approach" in deciding whether to impose the "drastic sanction" of default judgment in the case of a discovery violation. *Id.* *If possible, trial courts should impose sanctions that have a minimal effect on the evidence presented at trial and should not impose sanctions at all if the circumstances indicate that sanctions would be unjust.* *Id.* at 330. We presume that a trial court will act in accord with what is fair and equitable in each case. *Id.*

(Emphases added).

[48] We hold that the trial court's conclusion on this issue is clearly erroneous. Dismissal of Father's motion to contest the adoption based solely on his failure to appear for his first scheduled deposition, despite his offer to be deposed later that *same day*, was unwarranted and, given the fundamental interests at stake, unjust. *See Wright*, 989 N.E.2d at 330. We agree with Father that the "fundamental importance of the issues specifically in this matter," namely, his

putative parental rights, warranted "[l]ess draconian ways in which to sanction Father" for his failure to appear at his deposition. Appellant's Br. at 12.

[49] We reject Adoptive Parents' contention that dismissal was warranted because they were unduly prejudiced by Father's failure to appear at the deposition. Adoptive Parents maintain that, while the trial court had already vacated the April 25 hearing on Father's motion to contest the adoption, they had asked the court to reconsider and they "still had the chance of a hearing taking place on [April] 25th"[16] and, thus, it was essential that they depose Father on April 18.[17] But "the chance of a hearing" is mere speculation. Moreover, Father had offered to be deposed later in the day on April 18, but Rice flatly refused. When asked at oral argument to explain that refusal, counsel for Adoptive Parents responded that he "had no assurance that [Father] would show up." But counsel acknowledged that Father had not failed to appear for any matter scheduled prior to April 18.

[50] The trial court's order provided that the deposition would be taken "on or before April 18, 2016, and/or by agreement of the parties." Rice's outright rejection of Father's request to reschedule the deposition from the morning to the afternoon of the same day or at any other time was unreasonable. *See, e.g.*,

---

[16] At oral argument counsel for Adoptive Parents initially alleged that, as of April 18, the April 25 final hearing date "was still on," but he ultimately acknowledged that there was only "the chance of a hearing" on April 25 because the court had not yet ruled on their motion to re-instate the April 25 hearing date.

[17] We note that the parties had not yet exchanged witness and exhibit lists as of April 18.

*Howard v. Dravet*, 813 N.E.2d 1217, 1223 (Ind. Ct. App. 2004) (stating that counsel should cooperate and make "sincere efforts" to resolve discovery matters). Given that there was no hearing set to contest the adoption, Adoptive Parents have not shown undue prejudice by Father's failure to appear at his first scheduled deposition.[18]

[51] As Adoptive Parents correctly point out, in *C.A.B. v. J.D.M. (In re C.B.M.)*, 992 N.E.2d 687, 691 (Ind. 2013), our Supreme Court observed that "time is of the essence in matters involving children." But the court also emphasized as follows:

> We understand the trial court's concern for a speedy, permanent placement for [children subject to an adoption]. But a fit parent's rights are fundamental and constitutionally protected, *In re Visitation of M.L.B.*, 983 N.E.2d 583, 586 (Ind. 2013) (citing *Troxel v. Granville*, 530 U.S. 57, 64, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)), and *even a matter as important as [children's] best interests does not necessarily override that right. Id.*

992 N.E.2d at 691 (emphasis added). Here, Father has fought to establish his parental rights over Child since before Child's birth. Father's paternity and fitness to parent Child have not yet been determined, and he is entitled to an evidentiary hearing on those issues. Under the unique circumstances of this

---

[18] Adoptive Parents make much of the fact that the trial court had "ordered" Father to appear for his deposition on April 18, but, again, the court's order stated that he was to be deposed "on or before April 18, 2016, *and/or by agreement of the parties*." Appellant's App. Vol. II at 148 (emphasis added).

proceeding, we hold that Father's putative rights supersede any concern for a speedy, permanent placement for Child. *See id.*

[52] In sum, the trial court erred when it dismissed Father's motion to contest the adoption based on Father's failure to appear at his first scheduled deposition. And, because the trial court erred when it dismissed Father's motion to contest the adoption based on Father's purported failure to provide complete discovery, his failure to appear at the April 22 hearing, and/or his failure to appear at his April 18 deposition, we reverse the trial court's dismissal order and remand with instructions that the court hold an evidentiary hearing on Father's motion to contest the adoption.[19]

### Issue Four:  Recusal on Remand

[53] Finally, we address, *sua sponte*, whether the trial judge should recuse himself on remand.  We first note that Father moved the trial judge to recuse himself after counsel for Adoptive Parents wrote a letter of recommendation in support of the trial judge's application to the Indiana Supreme Court while this proceeding was pending in the trial court.  Counsel for Adoptive Parents characterized Father's recusal motion as "simply another attempt to get a continuance," but

---

[19]  On remand, the court shall first determine whether Father is Child's biological father.

we conclude that the motion was made for good cause, and we agree with Father that the judge should have recused himself at that time.[20]

[54] Following Justice Dickson's retirement announcement in November 2015, Judge Nation applied for the impending vacancy on the court. In his application, Judge Nation was required to provide the names of three attorneys who had been professional adversaries in the course of his practice or who had litigated substantial cases in his court and "who would be in positions to comment on [his] qualifications for appointment to the Indiana Supreme Court." Appellant's Supp. App. Vol. II at 8. Judge Nation designated Adoptive Parents' counsel, Rice, as one of his three references. Accordingly, on February 4, 2016, three days after Adoptive Parents' motion to compel, Rice wrote a letter to the Judicial Nominating Commission in which he endorsed Judge Nation's application and described him as "the greatest jurist" he had encountered in his "state-wide" litigation practice. *Id.* at 2. On March 9, the court granted the motion to compel and ordered production of Father's mental health records, even though, as explained above, Adoptive parents had wholly failed to comply with the mental health records statutes.

[55] Rule 1.2 of the Code of Judicial Conduct provides that a judge shall act at all times in a manner that promotes public confidence in the independence,

---

[20] Father filed a second motion to recuse based on an article that included the author's characterization of the trial judge's response to a question regarding the United States Supreme Court's decision in *Brown v. Board of Education* during an interview for a vacancy on the Indiana Supreme Court. We express no opinion regarding the merits of Father's second motion to recuse.

integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety. And Rule 2.11 provides that a judge shall disqualify himself in any proceeding in which the judge's impartiality might reasonably be questioned. We recognize Judge Nation as a capable and respected jurist with many years of distinguished public service. We ascribe no improper motive to the court or to counsel. Indeed, the Judicial Nominating Commission invites attorneys to comment on applicants for our appellate judiciary, and that is both necessary and useful.

But there is more here. In his application—submitted shortly before the adoption petition was filed in this case—Judge Nation expressly identified and designated Rice as one of his three required references. Rice subsequently wrote a letter of recommendation while this case was pending in Judge Nation's court. Rice's letter was not merely one of many letters, and it was not a gratuitous or coincidental endorsement. It was an integral part of Judge Nation's application.

The *appearance* of impropriety, that is, the mere appearance of bias or partiality, may require recusal if an objective person, knowledgeable of all the circumstances, would have a rational basis for doubting the judge's impartiality. *See Bloomington Magazine, Inc. v. Kiang*, 961 N.E.2d 61, 64 (Ind. Ct. App. 2012). The issue here is not whether the judge *is* biased or incapable of setting aside his relationship with Rice but, rather, whether an objective person would rationally doubt the judge's impartiality given that Rice wrote the letter of recommendation after Judge Nation had expressly designated Rice as a

reference. *See id.* This question is larger than this particular case and implicates public confidence in the administration of justice. *See, e.g.*, *State ex rel. Kirtz v. Delaware Cir. Ct. No. 5*, 916 N.E.2d 658, 661 (Ind. 2009).

[58] As the United States Supreme Court has observed,

> [a] fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that "[e]very procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law." *Tumey v. State of Ohio*, 273 U.S. 510, 532, 47 S. Ct. 437, 444, 71 L.Ed. 749 [(1927)]. *Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice."* *Offutt v. United States*, 348 U.S. 11, 14, 75 S. Ct. 11, 13 [(1954)].

*In re Murchison*, 349 U.S. 133, 136 (1955) (emphasis added).

[59] Here, put simply, there can be no doubt that the timing of the judge's application and Rice's letter to the Commission demonstrates at least an appearance of impropriety. *See, e.g.*, *Kirtz*, 916 N.E.2d at 661. Thus, we conclude that Judge Nation should have granted Father's first motion to recuse.

Father has not raised this issue on appeal, and we emphasize that we do not reverse on that ground. However, given our disposition of the three issues that are raised on appeal, the same concerns that indicate the motion to recuse should have been granted in the first instance also inform our consideration of whether Judge Nation should recuse himself on remand.

And we conclude that he should. In *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977), the United States Court of Appeals for the Second Circuit observed as follows:

> Absent proof of personal bias requiring recusa[l], Title 28 U.S.C. [§] 144, the principal factors considered by us in determining whether further proceedings should be conducted before a different judge are (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.
>
> Where a judge has made detailed findings based on evidence erroneously admitted or factors erroneously considered, the circumstances sometimes are such that upon remand he or she either cannot reasonably be expected to erase the earlier impressions from his or her mind or may tend to lean over backwards or overreact in an effort to be fair and impartial. A new fact-finder would not labor under any such handicap. The seriousness of this problem in any particular case will depend upon a number of factors, including the nature of the proceeding, the firmness of the judge's earlier-expressed views or findings, and the reasons for the reversal. Upon remand for a retrial, an

additional factor bearing upon whether to reassign to another judge is whether the retrial will be before the judge as a fact-finder or sitting with a jury. Where the judge sits as the fact-finder, reassignment is the preferable course, since it avoids any rub-off of earlier error. A classic example is the retrial of a criminal non-jury case resulting from a reversal attributed to the erroneous denial of a motion to suppress evidence, where reassignment is essential to preclude any possible consideration being given upon retrial to the suppressed evidence. No such problem is usually confronted upon retrial before a different jury.

(Citations omitted).

[62] Apart from the above-stated concerns with respect to the appearance of impropriety, the trial court's findings and conclusions demonstrate the court's negative assessment of Father's credibility and character, as well as his motives for objecting to the unqualified release of his mental health records despite his statutory right to make those objections. Based on the proposed order submitted by counsel for Adoptive Parents, the court's findings and conclusions mimic the harsh tenor of the arguments advanced by Adoptive Parents in support of dismissal throughout the proceeding. For example, the trial court characterized Father's lawful objections to the unqualified release of his mental health records before the April 11 hearing as "frivolous," as "intentionally hindering . . . the legitimate discovery requests for these records" by Adoptive Parents, and "designed to impede the ability of the Adoptive Parents [to] try this case on April 25, 2016." Appellant's App. Vol. II at 217, 222. In addition, notwithstanding Father's insistence that Adoptive Parents comply with the mental health records statutes, the court described Father's conduct as

"contumacious" and "consistently seeking a *de facto* stay [of the proceeding] through delay." *Id.* at 220. Finally, the court described Father's failure to appear at his deposition and in person at the April 22 hearing after his "continued pattern of non-cooperation and delay" as "the final straw." *Id.* at 222.

[63] We have a significant concern that the trial judge—or any trial judge similarly situated—would have difficulty setting aside such findings and conclusions, including the judge's determination that Father was not credible, in considering the evidence on remand at a final hearing on Father's motion to contest the adoption. *See, e.g.*, *Diehl v. Clemons*, 12 N.E.3d 285, 298 (Ind. Ct. App. 2014), *trans. denied*. Likewise, we are concerned that, if the trial judge were to remain on the case on remand, he "may tend to lean over backwards or overreact in an effort to be fair and impartial" in light of his earlier, strongly stated positions. *See Robin*, 553 F.2d at 10. Under the circumstances, namely, a contentious adoption contest where the court has already entered findings and conclusions adverse to Father's credibility and character, the trial judge "cannot reasonably be expected to erase the earlier impressions from his . . . mind[.]" *Id.* We must endeavor "to prevent even the probability of unfairness." *In re Murchison*, 349 U.S. at 136. Given that Father's putative parental rights are at stake on remand, we do not take these concerns lightly, and we recommend that the trial judge recuse himself from this proceeding.

### *Conclusion*

[64] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* And, as we have already observed, a natural parent enjoys a presumptively superior right over a nonparent to custody of a child, and a third party who seeks to displace a parent as custodian always bears the burden of overcoming the parent's superior right. *In re M.D.*, 612 N.E.2d at 1074. Here, while Father's putative rights have not been established, he has acted in the manner prescribed by the Indiana Code for the protection of his putative rights pending the establishment of his parental rights. Contrary to the trial court's conclusion that Father failed to prosecute his motion to contest the adoption without undue delay, Father has fought to establish his paternity and contest the adoption since before Child's birth. The onus was on Adoptive Parents to comply with Indiana Code Section 16-39-3-3, *see Williams*, 819 N.E.2d at 385-86, but, for many weeks, the trial court allowed Adoptive Parents to disregard the commands of that statute and then attributed the ensuing delays to Father.

[65] We reverse the trial court's order dismissing Father's motion to contest the adoption. We also reverse the trial court's order that Father's consent to the adoption is implied by statute, for either his failure to appear at the April 22 motions hearing or for failure to prosecute his petition without undue delay. *See* I.C. §§ 31-19-9-12(2), -18, -10-1.2(g). We hold that, on this record, Father's

consent cannot be implied.  We direct the trial court to set aside the adoption decree within seven days of the certification of this opinion.  We remand for further proceedings, including discovery, as needed; a hearing on Father's paternity petition; and a hearing on his motion to contest the adoption.  Finally, again, "to perform its high function in the best way 'justice must satisfy the appearance of justice.'"  *In re Murchison*, 349 U.S. at 136  (quoting *Offutt*, 348 U.S. at 14).  Thus, we recommend that the trial judge recuse himself from this proceeding on remand.

Reversed and remanded for further proceedings.


Bailey, J., and May, J., concur.